## LANGLEY v. COMMISSIONER OF INTERNAL REVENUE.
### No. 24.

Circuit Court of Appeals, Second Circuit.
Nov. 7, 1932.

AUGUSTUS N. HAND, Circuit Judge, dissenting.

William L. O'Conor, of New York City, and Henry J. Richardson, of Washington, D. C., for petitioner.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key and Hayner N. Larson, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Harold F. Noneman, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Russell L. Bradford, of New York City (Taylor, Blanc, Capron & Marsh and George H. Craven, all of New York City, of counsel), amicus curiæ.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

The petitioner created trusts, on December 1, 1922, in favor of her daughter and a nephew, for the duration of the life of the settlor or of the beneficiary or of the minority of the latter, whichever period should first expire. The settlor was one of the two trustees. The income was to be paid to the beneficiaries in the discretion of the trustee and to be applied to the maintenance of the beneficiary, or was to be paid to the settlor for the use of the beneficiaries. A complete power of amendment or revocation on written notice was reserved by the settlor in the original trust agreement. On June 16, 1924, the complete power of revocation in the original trust agreement was modified to read that the settlor "reserves the right to revoke this trust estate prior to the determination thereof, upon and at the expiration of twelve months and one day after notice of revocation as hereinafter set forth."

It was there stated that the notice of revocation should be sent by mail. On July 23, 1928, and November 14, 1928, the original trusts terminated by their terms upon the nephew and daughter, respectively, attaining their majorities. By the terms of the trusts, the principal became payable to the settlor. Instead of paying over the principal in each case on the day following each majority, July 24, 1928, in the case of the nephew, and November 15, 1928, in the case of the daughter, new trust agreements were executed directing the trustees to hold the principal on the terms set forth. The trust was for the life of the beneficiary or settlor, whichever proved shorter. The power of revocation remained requiring a notice of one year and one day. Notice of revocation was not given in the year 1928. The Commissioner taxed the income of these trusts to the petitioner, applying Revenue Act 1928, § 166 (26 USCA § 2166), derived from the Revenue Act of 1924, § 219 (g) (26 USCA § 960 note). The Board of Tax Appeals upheld the tax. This petition to review seeks a reversal of that determination.

The original and substituted trusts of personal property are valid under the law of New York which restricts the purposes for which express trusts may be created. The

power of revocation did not affect the validity of the trusts. Van Cott v. Prentice, 104 N. Y. 45, 10 N. E. 257. In the absence of revocation, the beneficiaries could enforce the trusts. Schreyer v. Schreyer, 101 App. Div. 456, 91 N. Y. S. 1065, affirmed 182 N. Y. 555, 75 N. E. 1134.

The trust could be revoked only by complying with the terms of the power of revocation (Gage v. Irving Bank & Trust Co., 222 App. Div. 92, 225 N. Y. S. 476, affirmed 248 N. Y. 554, 162 N. E. 522) or by consent of all the persons interested as provided in the New York Personal Property Law (Consol. Laws, c. 41) § 23.

Upon the termination of the original trusts on July 23, 1928, and November 14, 1928, the principal was not paid to the settlor. But, even though the settlor may not have received title to the corpus on the termination of the original trusts and before the trustees paid over the principal, as directed by the agreements, her complete control over the fund after such termination of the original trusts is clear, and the income from the corpus after that time was disposed to another trust, the settlor retaining complete rights to the corpus for one day only in each case, and the government is not now seeking to tax the income for that period. But its claim is based on section 166 of the Revenue Act of 1928 (26 USCA § 2166), which provides that income from a trust shall be taxed to the grantor if he "has, at any time during the taxable year, * * * the power to revest in himself title * * *" to the corpus:

The question presented is whether section 166 applies, and, if it does, whether or not that application violates the Fifth Amendment to the Constitution, if the settlor be taxed. The purpose of section 166 of the Revenue Act of 1928 is to prevent a taxpayer from evading the surtax rates by distributing his income among his family or otherwise attempting to have it taxable to distributees. Congress has the power to prevent this practice. Burnet v. Leininger, 285 U. S. 136, 52 S. Ct. 345, 76 L. Ed. 665; Corliss v. Bowers, 281 U. S. 376, 50 S. Ct. 336, 74 L. Ed. 916. It is also clear that, in order to gain the advantage of the higher rates on larger incomes, the federal government cannot create large incomes and tax them accordingly by considering the income of two or more persons as the income of one person or by measuring the income of one person by that of another. Hoeper v. Tax Commission of Wisc., 284 U. S. 206, 52 S. Ct. 120, 76 L. Ed. 248. There is an ambiguity in section 166 which the legislative history referred to by counsel does not entirely remove. The Senate revision of the House draft of the tax bill makes it clear that, if the settlor's power of revocation is shackled by a condition not satisfied in the taxable year, Congress did not intend to tax the income to the settlor. A condition entirely beyond the control of the settlor brings a trust within the exempted class, but does a condition partially or completely in control of the settlor bring the case within the class of revocable trusts which Congress did not intend to tax to the settlor? It was within the power of Congress to have said that trusts revocable on a condition not happening within the year were not taxable to the settlor in that year. Congress might have inserted the phrase "at any time in the taxable year" in the House Bill. Instead, Congress stated the class of revocable trusts taxable to the settlor. The language, "the power to revest in himself [settlor] title to any part of the corpus of the trust, then the income of *such part of the trust for such taxable year shall be included in computing the net income of the grantor," is argued, by the petitioner, to mean a revesting of the corpus within the taxable year to make it taxable to the settlor, and, by the respondent, it is argued that it requires merely the power of revocation. In Corliss v. Bowers, 281 U. S. 376, 50 S. Ct. 336, 74 L. Ed. 916, where it was held that the income was taxable to the settlor, the court pointed out that "The acquisition by the wife of the income became complete only when the plaintiff failed to exercise the power that he reserved. * * * Still speaking with reference to taxation, if a man disposes of a fund in such a way that another is allowed to enjoy the income which it is in the power of the first to appropriate, it does not matter whether the permission is given by assent or by failure to express dissent. The income that is subject to a man's unfettered command and that he is free to enjoy at his own option, may be taxed to him as his income, whether he sees fit to enjoy it or not."

This settlor could not revest and obtain the income within the taxable year 1928, for she had not served the necessary notice of one year and a day. If the trust could not be revoked during such year, then the income must be taxable to the recipient thereof. The power referred to in the statute must be one by which the grantor could revest in himself the title to the corpus during the taxable year. Lewis v. White (D. C.) 56 F. (2d) 390; appeal dismissed Oct. 21, 1932

(C. C. A. 1) 61 F.(2d) 1046. In Clapp v. Heiner, 51 F.(2d) 224 (C. C. A. 3), the trust contained a provision of revocation on six months' notice. This gave, as Justice Holmes said, "the unfettered command" over the principal of the trust within the year and was held taxable to the settlor.

In the instant case, the principal of the trust so far as 1928 was concerned, had been irrevocably transferred and did not belong to the petitioner, and she, having put it beyond all control, gave the income during that year to another recipient. She could not by her own positive act revest herself with title to the property during the year 1928, within the terms of the trust and she had no control over the principal until the termination of the trust in that year. Therefore she had lost control of the income during the period of taxation. Burnet v. Leininger, 285 U. S. 136, 52 S. Ct. 345, 76 L. Ed. 665; Mitchel v. Bowers, 15 F.(2d) 287 (C. C. A. 2). Since during the year no act could be done by the petitioner so as to bring to her any portion of the corpus of the trusts or the income thereof, she is not subject to taxation within the purview of section 166. The Board of Tax Appeals in Ashforth v. Com'r, 26 B. T. A. —— has expressly overruled their decision in this case, and for the reason that they deemed it inconsistent with Corliss v. Bowers, Clapp v. Heiner, and Lewis v. White, supra.

With the view we take that the statute does not permit taxing the income of the trust to the settlor under the circumstances here disclosed, it becomes unnecessary to consider the argument advanced as to the constitutionality of section 166 of the Revenue Act of 1928.

Order reversed.

AUGUSTUS N. HAND, Circuit Judge (dissenting).

On May 29, 1928, Congress by section 166 of chapter 852 of 45 Stat. 840 (26 USCA § 2166) provided that: "Where the grantor of a trust has, at any time during the taxable year, either alone or in conjunction with any person not a beneficiary of the trust, the power to revest in himself title to any part of the corpus of the trust, then the income of such part of the trust for such taxable year shall be included in computing the net income of the grantor."

After the passage of the act, and during the year 1928, the petitioner created two trusts whereby the income was to be paid to her nephew and her daughter, respectively, for life or until the prior termination of the trusts by the death of the settlor or by revocation, when the principal should be paid to the settlor or to her estate.

The settlor reserved the right to revoke each trust prior to the determination thereof "upon and at the expiration of twelve months and one day after notice of revocation" to the trustees. The trusts succeeded in time similar trusts which terminated by limitation the day before the above mentioned trusts were set up. Section 219 (g) of the Revenue Acts of 1924 (26 USCA § 960 note) and 1926 (43 Stat. 33, 34) contained provisions identical with section 166 of chapter 852 of 45 Stat. 840 (26 USCA § 2166), above quoted. In none of the trusts did the settlor exercise her powers of revocation.

The constitutionality of section 219 (g) of the Act of 1924 was sustained by the Supreme Court in Corliss v. Bowers, 281 U. S. 376, 50 S. Ct. 336, 74 L. Ed. 916, in a case where the power of revocation might always be exercised, and was subject to no requirement of notice before exercise. Justice Holmes there said (at page 378 of 281 U. S., 50 S. Ct. 336, 337, 74 L. Ed. 916) that: "If a man disposes of a fund in such a way that another is allowed to enjoy the income which it is in the power of the first to appropriate it does not matter whether the permission is given by assent or by failure to express dissent."

The question before us is whether the condition manifestly ingrafted upon the execution of the power in order to avoid taxation can be regarded as a means of accomplishing the result aimed at either (1) because the statute does not cover such a power as we have here; or (2) because, if it did, it would violate the Constitution.

It is evident that, if the act can be defeated by such a simple mode of drafting a power of revocation as was employed here, a settlor who consults skilled counsel can never be taxed upon the income of a revocable trust. While a man has a perfect right to keep outside of a taxing statute if he can, such an obvious mode of completely avoiding a tax while substantially occupying the position the tax was intended to reach is not to be lightly assumed.

The taxpayer contends that the words "at any time during the taxable year" qualify "to revest" rather than "has the power." But the clause justifies no such construction. On the contrary, when read most naturally, it imposes a tax wherever during the taxable year the taxpayer has the power

to revest the corpus in himself at any time. During the year 1926, Mrs. Langley had the power to revest the corpus in herself, though revesting would not take place until the prescribed twelve months and one day after giving notice had expired. In Clapp v. Heiner, 51 F.(2d) 224, the Circuit Court of Appeals of the Third Circuit held income taxable against a settlor who had provided by his trust that the trust might be revoked upon six months' notice.

Even if section 166 and its predecessors be regarded as ambiguous, the ambiguity should be resolved in a way that reasonably supports the purposes of the act. United States v. Katz, 271 U. S. 354, 362, 46 S. Ct. 513, 70 L. Ed. 986; Ozawa v. United States, 260 U. S. 178, at page 194, 43 S. Ct. 65, 67 L. Ed. 199; Holy Trinity Church v. United States, 143 U. S. 457, 12 S. Ct. 511, 36 L. Ed. 226; Fidelity Nat. Bank & T. Co. v. Commissioner (C. C. A.) 39 F.(2d) 58 at page 61.

The taxpayer's argument that a power exercisable only after notice is not a power within the meaning of the statute leads to extreme results. It would allow the tax to be avoided by requiring even one day's notice of revocation.

The taxpayer also says that the report of the Senate Finance Committee supports her construction of the statute. That committee rewrote section 219 (g) of the Bill as it orginally came from the House, which read: "Where the grantor of a trust reserves a power of revocation which if exercised would revest in him title to the corpus of the trust then the income of such trust shall be included in computing the net income of the grantor."

The Senate Committee reported that: "The subdivision of the House Bill has been rewritten in order that there shall not be taxed to the grantor the income of a trust as to which the grantor has a power of revocation subject, however, to a condition which has not happened."

But the "condition" referred to in the committee's report cannot reasonably be thought to have been a mere notice of intention to revoke within the sole control and whim of the settlor, but something of substance dependent on an occurrence other than what amounts to an exercise of the power itself. I think a reasonable construction of the statute supports the finding of the Board of Tax Appeals that Mrs. Langley had a taxable power during the year 1928.

Nor do I think the construction advocated by the government would render the act unconstitutional. In Hoeper v. Tax Commission, 284 U. S. 206, at page 215, 52 S. Ct. 120, 122, 76 L. Ed. 248, Justice Roberts said that what "is not in fact the taxpayer's income cannot be made such by calling it income." But that decision involved an income tax statute which authorized an assessment against a husband of a tax computed on the combined total of his own and his wife's income. In the present case, the settlor by voluntary act retained power to revest herself with title to the corpus of the trust which she had set up. The trustees held the corpus subject to her ultimate direction. The settlor's tax could be measured by the income of such a trust just as the income of an assignor who has irrevocably assigned future income without transferring the property from which it arises can be measured by assigned accruals. Burnet v. Leininger, 285 U. S. 136, 52 S. Ct. 345, 76 L. Ed. 665.

It is to be remembered that the statute under consideration was not retroactive in respect to the transactions involved. At the time the settlor set up the trust containing the power of revocation in 1928, the statute had been enacted. Likewise at the time a similar power was inserted in a trust comprising the same corpus the act of 1924 was in effect taxing such powers. She created the trust with the statute in operation and, as in the case of the donee in Taft v. Bowers, 278 U. S. 470, 49 S. Ct. 199, 73 L. Ed. 460, 64 A. L. R. 362, the transactions took place with the knowledge that a tax would be imposed. To apply the statute under such circumstances is not unreasonable or arbitrary.

For the foregoing reasons I think the decision of the Board of Tax Appeals was correct and should be affirmed.